## Standifer and Standifer v. M'Whorter.

1. Where there is a remedy at law, there is no jurisdiction in equity.
2. When a note is given in satisfaction of a subsisting judgement, and to compromise a doubtful claim, with a knowledge of the facts and circumstances, it precludes all inquiry as to the consideration and validity of the contract on which the judgement was obtained, and as to the legality and validity of the judgement itself

This was a bill in equity, filed by Hance M'Whorter in the Circuit Court of Franklin county, in July, 1824, against Israel Standifer, James Standifer, and James Clemens.

The complainant alleged that on the 2d of December, 1818, he gave, in payment of some land, his note to Clemens, for $1800, payable the 25th of October, 1819, with interest at five per cent, per month, from the date, if not punctually paid; that he was inebriated when he gave it; that on the 16th of June, 1819, Clemens assigned the note to Israel Standifer, and on the 27th of November thereafter, the complainant paid $164 68 to said Israel, which was credited on the note; that Standifer afterwards brought an action of debt on the note, to which the complainant pleaded *non est factum;* but being unable to sustain his plea, and neither himself, his counsel, nor the presiding Judge, being then advised of the illegality and penal character of the premium stipulated for, [a] judgement was rendered in favor of Standifer, in Franklin Circuit Court, at April term, 1821, for the debt of $1800, and $2400 32 damages; that on the 16th of November, he, still being ignorant of the law governing said premium, and threatened with the sacrifice of his property, paid Standifer $1500, as he thought he was bound to do, and gave him two notes, with two securities, one payable the 25th December, 1822, and the other the 25th December, 1823, each for $1250, with interest from the date, to settle the claim; that on the 26th of November, Standifer executed to Clemens a written obligation, promising to pay him one sixth of the amount of said two notes, payable when they were collected, with interest from the date; and that on the 15th of January, 1822, this obliga-

*[a] See the act of 1818, Laws Ala. p. 443, and the case of Henry and Winston vs. Thompson, where the construction of that act was first given by the Supreme Court. Minor's Ala. R. p 209.*

tion was satisfied to Clemens, by the complainant, and was assigned to him by Clemens; which payments actually made by him, he alleges, overpaid the principal and *lawful* interest, and left $9 44 due him.

He further alleges, that James Standifer, as the assignee of Israel Standifer, brought suit against him on the note for $1250, due in 1823, in Franklin Circuit Court; and also on the one due in 1822, against the securities of the complainant in Lawrence county; that the last suit was still pending, but that judgement on the former had been obtained in April, 1824, for $1250 debt, and $241 damages; that after giving the notes for $1250, the complainant sued a writ of error to the Supreme Court, on the original judgement obtained by Israel Standifer, which, at June term, 1824, was reversed;[a] and a corrected judgement was then rendered by said Court, for $1697 10 only, the amount properly due, as shewn by the record, being the balance unpaid, with interest from the maturity of the note till the rendition of the judgement in the Circuit Court; the subsequent payments, which he contends have overpaid the amount of the corrected judgement, not appearing on the record. The bill prayed an injunction to restrain James Standifer from collecting the two notes of $1250, and that the excess of $9 44 overpaid, should be refunded to him.

a Minor's Ala. R. 411.

Israel Standifer in his answer alleges, that he knows nothing of the consideration or circumstances attending the making of the note for $1800; that when Clemens assigned it to him, he gave him an obligation for $300, payable when the whole of the note should be collected of M'Whorter, with the understanding and belief, that the five per cent per month was recoverable if payment was not punctually made. He admits the payment of $164 68, and that he obtained judgement as stated in the bill. He states, that on the 16th November, 1821, the complainant applied to him for a compromise and amicable settlement; and stated that his counsel had advised him he could obtain a reversal of the judgement, and get the damages reduced to eight per cent per annum; that he, the respondent, was advised by his counsel, that the judgement could be sustained; but the complainant offered, if he would remit $200 32, and the interest on the judgement up to that time, to pay down $1500, and give the two notes for $1250 each, with security; which proposal

JULY 1828.

Standifer and
Standifer
v.
M'Whorter.

was accepted and carried into effect as a full and final settlement; a receipt was given against the judgement, and it was expressly agreed, that no writ of error should be sued, and that there should be no further difficulty. Respondent says, he paid to Clemens one sixth of the $164 68, and of the $1500; and that Clemens claimed one sixth of all the proceeds, after deducting expenses; that to this he assented, and after the final settlement made with M'Whorter, he took up his note given to Clemens, and gave him the conditional promise for the one sixth of the notes for $1250, as stated in the bill, with the understanding that a proper proportion of future expenses of collection should be deducted. He admits the reversal of the judgement in the Supreme Court, but insists that the settlement was fair, made by M'Whorter with a full knowledge of all the facts, and after obtaining the advice of counsel, and that it was conclusive.

The answer of James Standifer does not disclose much that is material. He states that he knows nothing but from hearsay, as to the transactions between M'Whorter and Clemens; that when the two notes for $1250, were transferred to him by Israel Standifer, he informed him that they were given on a compromise between him and M'Whorter; that he had deducted $300 or $400 to effect it; and he insists that the taking up of the conditional obligation made by Israel Standifer to Clemens, is no payment nor offset against said notes; that he was an innocent purchaser of the notes before they fell due, and that the conditional promise is a mere personal liability of Israel Standifer, and cannot affect his rights.

At the fall term 1827, the cause was heard on the bill and answers, and the Circuit Court decreed a perpetual injunction against the defendants, restraining them from collecting the two notes for $1250 each, and that they should pay the costs. To reverse which decree, the Standifers sued their writ of error to this Court.

MARTIN and HOPKINS, for the plaintiffs in error, insisted on a reversal of the decree, on the following grounds:

1st. That the question, whether or not the notes mentioned in the bill of complaint afford a cause of action, is entirely of a legal character, and of which a court of equity has no jurisdiction. [a]

a Jones vs. Watkins, et als. ante p. 81.

2d. The settlement mentioned in the bill in relation to the original judgement, was a compromise between the

parties of a doubtful right, which this Court would not disturb if it had jurisdiction. [a]

3rd. The notes in controversy were given by the settlement as a voluntary payment of the judgement, and the recovery of them cannot be resisted, as the right to recover upon them occupies the same ground that the right to retain money voluntarily paid does. [b]

4th. Equity considers as done, what has been fairly agreed to be done, and the claim of the defendant to relief stands on the same ground as if the original judgement against him had not been reversed; because he agreed when the compromise was made, that he would not prosecute a writ of error, and that judgement, if in force, would be conclusive of the right of the parties. [c]

5th. That the defendant was not entitled to the benefit of the note paid to James Clemens as a set-off, because he has not shewn that he paid it before he had notice of the assignment of his notes to James Standifer; because the question whether it was a valid set-off or not, is a question purely legal; and because it was not a proper set-off either at law or in equity.

They also insisted that the buying of the note of Clemens, was a further evidence of confirmation of the contract; that the answers as presented by the record, must be taken as admitted to be true in all respects, and that the bill should have been dismissed.

KELLY and HUTCHINSON, for the defendant in error.

JUDGE CRENSHAW delivered the opinion of the Court.

IT is the opinion of the Court, that the principles involved and settled in the celebrated interest questions, determined in this Court in January, 1827, [d] are decisive of the main question involved in this case.

We think, that the giving of the notes of $1250, with a knowledge of all the circumstances, or with a view of compromising a doubtful claim, and in satisfaction of a subsisting judgement, precluded the party, either in law or equity, from inquiring into the consideration and validity of the contract on which the first judgement was obtained; and that if this had been an available defence, it was good at law, and therefore is no ground for equitable jurisdiction.

JULY 1828.

Standifer and Standifer
v.
M'Whorter.

[a] 1 Bibb Rep. 168.
2 John. Chy. Rep. 51, 60.
[b] 12 John. 409.
Jones vs. Watkins, et al. ante p. 81.

[c] 2 Munf. 1, 7.

[d] Ante page 81.

The set-off insisted on, we deem equally inadmissible, either at law or in equity ; and if admissible at all, it was good at law ; that the undertaking of Israel Standifer to pay Clemens one sixth part of the money when collected, was a mere personal liability, and cannot be considered as part payment of the notes ; nor can it be the subject matter of a set-off. The decree of the Circuit Court is, therefore, reversed ; and it is ordered and decreed by this Court, that the injunction be dissolved, and that the bill be dismissed with costs.

Judgement was rendered against the complainant below, and his securities in the injunction bond, without damages.

JUDGE GAYLE not sitting.